hBYRNES, Chief Judge.
Claimant-appellant, Joyce Noel, appeals a judgment denying her workers’ compensation claim against her employer, the Desire Area Resident’s Council, and the Louisiana Workers’ Compensation Corporation. We affirm.
Claimant filed a 1008 Disputed Claim for compensation on November 27,1996, alleging that she suffered a low back injury on November 28, 1995, while lifting a dresser containing four or five drawers into a dumpster, as well as a mental injury as a result of “mind games”, “tricks”, “threats”, and “false charges” by her co-employees in the course of and pursuant to her duties as an employee of the Desire Area Resident Council.
As we find that claimant failed to prove her claim as a matter of fact, there are no legal issues that need to be addressed by this Court.
Sometime in late 1995, claimant began a job picking up trash for the Desire Area Resident Council. Claimant testified that in spite of being assured by Ms. Joyce Quinn, one of her superiors, that she would be appointed as the next supervisor, she did not receive the appointment. Claimant felt that Ms. Quinn had “tricked” her and lied to her.
| ¡,,Claimant also testified that she had been assured by Desire Area Resident council president, Kathleen Matthews that she would be appointed to the council. When that did not occur she again felt “tricked.”
Claimant testified that her co-workers picked on her, but she admitted that she joked around with them. She also testified that Kenneth Gardner, a co-worker, threatened to hurt her, but he denied it. He testified by deposition that claimant and the other workers would joke around. He asserted that claimant laughed when the joke was on another worker but was impatient when the joke was on her. He was never asked to pick up anything heavy and he never saw any of his co-workers asked to do so.
Charlene Slack, another co-worker who testified by deposition, stated that, “We don’t pick up nothing heavy.” She also testified that, “[Y]ou can’t pick up a dresser and put it in a dumpster.” She further testified that the claimant told her that she had previously been out of work because of her back. She never threatened to harm the claimant in any way.
Claimant testified that on November 27, 1995, when Deborah Davis instructed her to stop doing what she was doing and clean up the area in front of the office, claimant snapped back: ‘Why you tripping, we’re going to take care of it.” Ms. Davis admitted that she was offended and raised her voice when claimant accused her of “tripping” which she took to mean that claimant was accusing her of being on drugs. But Ms. Davis testified that the claimant also raised her voice.
Claimant resigned from her job the next day, complaining in her letter of resignation of being falsely accused of not doing her job and of being “mentally abused” under the leadership of Kathleen Matthews. She also complained about the lack of vacation, sick leave and health benefits as well as under-staffing. | ¡¡However, her letter of resignation is really more important for what it fails to mention — it makes no mention of any injury.
*778 Claimant testified that she reported her back injury to Ms. Bonnie Peters, the newly elected Desire area Resident Council president, within a week after the alleged November 28, 1995 accident, and that Ms. Peters laughed at her. Ms. Peters contradicted claimant, testifying consistent with Ms. Davis’ testimony that claimant never told her about any back or mental injury, that she had no notice of claimant’s alleged injuries until she attended a mediation conference on January 29, 1997, and that she never made fun of, laughed at, or cursed the claimant. Ms. Peters further testified that claimant frequently came by her office subsequent to her resignation and that each such visit was cordial and without any mention of any kind of injury. On several such occasions, claimant asked to be reinstated in her job. Furthermore, Ms. Peters cast additional doubt on claimant’s version of events by testifying that there was nothing heavy to lift in the area in which claimant was working at the time of the alleged accident. Ms. Peters’ description of the dumpster was realistic and such as to make the possibility that claimant lifted a four or five drawer dresser overhead into it by herself all the more implausible:
A. The dumpsters at the desire Housing Development set higher. I’m 5'5" and it sits taller than me. And there is just a little square box so you can pull the door open on the side like this here to put your trash bag in. Anything other than that as far as furniture would have to been lifted up over your head. And there is a flap on the top that you have to open up and you can throw it over in there.
Q. The little hole in the side you described, would that be for just garbage bags and things like that?
A. Yeah.
|4Q. It would not be big enough to set a dresser in?
A. No.
Ms. Deborah Davis testified that she had no notice of any injury to the claimant prior to the mediation conference of January 29, 1997, that claimant continued to frequent the office subsequent to her resignation without mentioning any form of injury or slight, and that all such visits were cordial. Ms. Davis did not ask the claimant to pick up any furniture and she saw no dressers in the area. Ms. Davis went on to confirm Ms. Peters’ description of the dumpster, which reinforces the inference that claimant’s description of the accident is not plausible. She attempted to persuade the claimant not to resign. Ms. Davis never cursed the claimant, nor did she ever hear anyone else do so.
Claimant alleges that she has been totally disabled since November 28, 1995, the date on which she purportedly hurt her back while attempting to lift a dresser. She testified that since her accident she has been treated for Pseudotumor Cerebri which is also known as Idiopathic Intracra-nial Hypertension, a condition of elevated cerebrospinal fluid in the absence of a mass in the brain. It occurs most often in overweight females. Headaches, a ringing in the ears, and double vision are all symptoms of this condition which could account for claimant’s complaints of dizziness, difficulty thinking and confusion.[1] Claimant testified that she is taking pain medication for her back and Prozac.
*779 Claimant received treatment ante-dating her alleged work related accident at Tulane University Hospital and Charity Hospital for symptoms similar to all of the aches and pains that are the subject of the litigation. Tulane’s records show | .-complaints of depression dating back to 1978. In 1991, claimant was diagnosed with disabling chronic lower back pain as a result of a work related injury while employed by the Sewerage and Water Board and a car accident in 1989. In February of 1994, claimant complained of visual disturbances and headaches. She was taking Prozac. It was noted that she had a working diagnosis of idiopathic hypertension, or pseudomotor cerebri. In July of 1995, some four months before her alleged injury while lifting the dresser, claimant complained of a back injury and “nerves” and was taking Prozac.
Charity Hospital’s records indicate that the claimant was diagnosed with chronic back pain in June of 1990 as a result of the 1989 car accident. Those records also show that in July of 1995 that the claimant was taking pain medications for low back pain. This was some four months prior to the injury with the dresser which forms the basis of the instant litigation.
Claimant continued to receive treatment from both Tulane and Charity Hospitals. In February of 1996, claimant complained of low back pain after doing aerobics. In June of the same year, claimant described a depression of “many years.” She was diagnosed with depression with psychotic features and a history of pseudomotor cer-ebri.
On March 21, 1997, it was noted that claimant had a history of pseudomotor cer-ebri, chronic headaches, and anxiety/depression. The treating physician noted that the worsening pseudotumor was causing the claimant’s depression to worsen. None of these medical records made any mention of low back injury or mental injury related to the claimant’s employment with the Desire Area Resident Council.
| ^Claimant had a history of complaining about how she was treated by her coworkers. Claimant did not work from the time of her February 15, 1989 injury with the Sewerage and Water Board until she went to work for the Desire Area Resident council in November of 1994.
Claimant testified that on the day she was allegedly injured while trying to lift the dresser:
I was — I—I went to the doctor after I left that day [November 28, 1995] and I went to the Mental Health Clinic for help. And I explained to them that I was mixed up and confused and I needed help and they helped. They gave me medication and treated me right away. [Emphasis added.]
Claimant never identified the “Mental Health Clinic” and produced no medical report showing treatment on that day. Claimant could not remember the name of the social worker at the clinic she claims reported her injury to her employer, nor could she remember the name of any doctor. In fact, there were so many gaps in claimant’s memory that it was inevitable that the Workers Compensation Judge found that she failed to prove her case.
Claimant said that she could not remember in response to most questions under cross examination. After testifying that she could not remember whether she had complained of lower back pain prior to the alleged injury of November 28, 1995, the trial court sustained defense counsel’s objection to the attempt by plaintiffs counsel on redirect to establish that accident of November 28, 1995 may have aggravated a pre-existing injury, since she had already testified that she could not remember the occurrence of any such injury.
The Workers Compensation Judge found that the claimant’s uncorroborated *780 testimony was insufficient to prove her case by a preponderance of the evidence. |7This case involves no legal issues. Our review of the record, as set forth above, shows that as a matter of fact, the claimant failed to carry her burden of proof even if this Court were to favor her with a de novo review rather than employing the manifest error standard of review this case calls for. The claimant’s testimony was riddled with glaring memory gaps and what she did remember does not seem likely to have occurred. Her testimony was not only uncorroborated by witness testimony, it was contradicted by witnesses and convincing medical evidence of pre-existing injury and symptoms. To the extent that the existence of claimant’s symptoms may be believed, more likely than not, they should be attributed to conditions pre-dating that of her alleged accident of November 28,1995.
As we have found that the plaintiff failed to prove any work related injury, we need not address claimant’s demand for penalties and attorney’s fees.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The record contains only the fact that claimant was diagnosed with the condition. The condition is not defined. However, the claimant does not dispute the diagnosis or the defendant's definition of the condition. Additionally, the description of the condition is one that this Court can take notice of under LSA-C.E. art. 201B(2).